POWERS, by Guardian *ad litem,* and another, Appellants, vs. JOINT SCHOOL DISTRICT No. 3 OF PRICE COUNTY, Respondent.

*December 4, 1957—January 7, 1958.*

For the appellants there were briefs by *Arthur DeBardeleben* of Park Falls, attorney, and *Genrich, Terwilliger, Wakeen, Piehler & Conway,* and *Paul D. Hilton,* all of Wausau of counsel, and oral argument by *Mr. Herbert L. Terwilliger* and *Mr. DeBardeleben.*

For the respondent there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and *Falge & Moran* of Ladysmith, and oral argument by *Richard P. Tinkham* and *James P. Moran.*

Wingert, J.   Reversal of the judgment for the defendant is sought on the grounds (1) that there is no credible evidence to sustain the jury's finding that the negligence of the bus driver Anderson with respect to lookout was not a substantial factor in causing the injury, and (2) that there was prejudicial error in one of the court's instructions to the jury. We find no error, however, and so must affirm.

1. *Causation.* There was considerable conflict in the testimony pertaining to the question of lookout. Several wit-

nesses testified, not consistently, to the presence at various places of children whom Anderson testified that he did not see. Thus there was testimony that children were on and about the small cement platform, and testimony that none were there. There is no way of telling which version of the testimony of the witnesses other than Anderson was accepted by the jury, or what children in what places the jury considered that Anderson should have seen in the exercise of ordinary care. Plaintiff contends that on each of the permissible hypotheses upon which a finding of negligence with respect to lookout could properly be based, the circumstances were such that as a matter of law the negligence was a substantial factor in causing the accident, and that therefore the trial court erred in not granting plaintiffs' motion after verdict to change the answer of the causation question from "No" to "Yes."

Of course if any one of the various permissible versions of the facts would support both a finding of negligence as to lookout and a finding that such negligence was not causal, the verdict must stand. The trial court considered that the fact picture based mainly on the testimony of the witness Motley warranted the verdict.

Motley was a senior student in the high school. At the time of the accident he was standing on the east side of the high-school building, near its northeast corner. He testified that he noticed Anderson's bus as it was completing the "U" turn and moving eastward toward the place where it stopped. When the bus was well in his view, with its front end 10 or 15 feet past the northeast corner of the school building, he saw a group of about 10 small children running along the south side of the bus. The bus was going slowly (two or three miles per hour), and the children were running a little faster, and gaining on it. Some of them had reached a point where they were opposite the front door of the bus, which had large panes of glass from top to bottom,

so that the driver could see anyone beside the door. Plaintiff Michael Powers was running the farthest back in the group of children and somehow fell and slid under the bus, and its right rear wheels went over him. The bus stopped when its rear end was six to 10 feet beyond where Michael was lying. The driver Anderson testified that he did not see anyone running beside the bus or in that area.

The trial court held that on this testimony the jury could properly have found Anderson negligent in not keeping a lookout through the glass door to his right, which would have enabled him to see the children who were abreast of the door; and that the finding that such negligence was not a substantial factor in causing Michael's injury was also warranted because there was no evidence that the children had been running beside the door for a long enough time. so that if Anderson had been keeping a proper lookout and had seen them when he should have seen them, he could have brought his bus to a complete stop before the rear wheels passed over Michael.

Plaintiffs contend that the evidence shows that the children must have been running beside the bus, at a point where Anderson could have seen them had he looked, for an appreciable period of time, during which Anderson could have stopped before he ran over Michael, had he maintained a proper lookout. We do not so read the testimony.

We agree with the learned trial judge that the jury could properly have concluded that the children at the front of the pack reached a point beside the glass door, where Anderson could have seen them had he looked to his right, only such a short time before he actually stopped, that if he had stopped as soon as possible after he should have seen the children, he might still have run over Michael.

The jury need not have considered that Anderson should have seen the front-running children at the first moment they caught up with the front door of the bus, for he had a duty

to keep a lookout ahead as well as to the side, and hence at best his glances to the right must necessarily have been intermittent. Some allowance could properly have been made also for reaction time on his part. Thus the jury may properly have reasoned that if the driver had exercised care in regard to lookout to the right, he still might not have seen the children abreast the door the instant they got there, and when he did see them, could not have stopped the bus before Michael was run over. Michael himself testified that the bus was slowing down to stop when he fell, and the evidence shows that it proceeded only a few yards after running over him, since when it stopped he was lying only six to 10 feet behind the end of the bus and some 13 to 17 feet behind the wheels.

The plaintiffs argue that the jury was merely speculating if it reached the conclusion above summarized. If the evidence permitted the inference in question, and we agree with the trial court that it did, the jury was warranted in drawing that inference. The burden of proof on the question of causation was on the plaintiffs, and since they failed to negative such an inference, they cannot complain that the jury was merely speculating in adopting it. While negligence in failing to keep a proper lookout is usually causal, it is not always so, and this is one of the relatively rare cases where the jury could properly say it was not causal.

2. *Instruction to jury.* Plaintiffs see error in the following instruction to the jury on the matter of burden of proof:

"In order to warrant an affirmative answer to any of these questions Nos. 1 to 6, inclusive, your minds must be satisfied or convinced by a preponderance of the evidence and to a reasonable certainty that your answers to the questions should be 'Yes.' "

An instruction approved by this court on various occasions states the requirement "that the jury be satisfied to a reasonable certainty by a fair preponderance of the evidence."

*Bursack v. Davis,* 199 Wis. 115, 121, 225 N. W. 738; *Bengston v. Estes,* 260 Wis. 595, 598, 51 N. W. (2d) 539. The instruction given in the instant case departs from that approved form (1) by omitting the word "fair" before "preponderance," and (2) by inserting "and" after "preponderance of the evidence" and before "to a reasonable certainty." It is argued that these deviations placed an unwarranted burden on plaintiffs by requiring them to satisfy the jury by a preponderance of the evidence instead of only a fair preponderance, and by requiring both a preponderance of the evidence *and* a reasonable certainty instead of only a fair preponderance of the evidence to a reasonable certainty.

If the instruction as actually given was incorrect, and we do not hold it so, we cannot believe that prejudice resulted from it. It is inconceivable to us that the jurymen so accurately retained the precise words of the instruction in their minds during their deliberations or that they so meticulously analyzed its exact shades of meaning, that their verdict could have been influenced by the departures from the norm.

*By the Court.*—Judgment affirmed.