BRUSS by Guardian *ad litem*, and others, Respondents, v. MILWAUKEE SPORTING GOODS COMPANY, Appellant.
WHITE, Individually and as Guardian, Respondent, v. SAME, Appellant.

*April 10—May 9, 1967.*

690

691

For the appellant there were briefs by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Reuben W. Peterson, Jr.,* and *George N. Kotsonis* of counsel, all of Milwaukee, and oral argument by *Mr. Peterson.*

For the respondents there was a brief by *Richard L. Novotny,* attorney, and *Eugene A. Kershek* of counsel, both of Milwaukee, for Gerald and Hilbert Bruss, and by *Burke & Schoetz,* attorneys, and *David J. Schoetz* and *Peter S. Balistreri* of counsel, all of Milwaukee, for Thomas A. and Michael White, and oral argument by *Mr. Kershek* and *Mr. Balistreri.*

HANSEN, J.   The issues raised in this appeal are as follows:

1. Is there any credible evidence which, under any reasonable view, admits of an inference supporting the jury verdict?

2. Did the defendant breach any duty to the plaintiffs?

3. Did the trial court err in:

(a) Refusing to admit the plaintiffs' original complaint, which alleged the same allegations of negligence against Narragansett as against the respondent?

(b) refusing to submit a question asking whether Narragansett was negligent with respect to the manufacture and installation of the bleachers?

(c) refusing to submit a question asking whether the school district was negligent in not providing a safe place?

*Proof of Negligence and Causation.*

This court has recently stated the standard of review of a jury's findings in a negligence action in *Cedarburg Light & Water Comm. v. Allis-Chalmers* (1967), 33 Wis. (2d) 560, 563, 148 N. W. (2d) 13:

". . . Upon review in this court we are committed to the rule that the judgment must be upheld if there is any

credible evidence which under any reasonable view admits of an inference supporting the verdict. . . ."

See also *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 128 N. W. (2d) 400.

There is sufficient credible evidence in the record to sustain the jury finding of negligence. On January 8 or 9, 1962, the defendant's employee, John Collins, inspected the bleachers and reported several defects as hereinbefore stated. Although the defendant had full knowledge of these defects, it did not repair them or cause them to be repaired, and did not notify the school district of possible danger involved.

The defendant takes the position that there was no positive proof that the defects still existed at the time of the accident on February 12th. However, a letter from the president of defendant to Narragansett dated February 8th indicates that the defects in the bleachers continued to cause difficulty, and there was no proof that the defective conditions within the knowledge of the defendant had been eliminated by the date of the accident. Conditions once proved to exist are presumed to continue in the absence of evidence to the contrary. *Racine County v. Industrial Comm.* (1933), 210 Wis. 315, 246 N. W. 303; *S. S. Kresge Co. v. Garrick Realty Co.* (1932), 209 Wis. 305, 245 N. W. 118.

The defendant further challenges the jury's findings with respect to causation. Our court is committed to the "substantial factor" test of determining proximate cause, *Lee v. National League Baseball Club* (1958), 4 Wis. (2d) 168, 175, 89 N. W. (2d) 811, and whether the defendant's conduct is a substantial factor is for the jury to determine unless the issue is so clear that reasonable men could not differ. *Jeffers v. Peoria-Rockford Bus Co.* (1957), 274 Wis. 594, 603, 80 N. W. (2d) 785; *Weber v. Walters* (1954), 268 Wis. 251, 67 N. W. (2d) 395; Prosser, Law of Torts (3d ed.), pp. 244, 246, sec. 41.

There is credible evidence from which the jury could determine that the defendant's negligence was a substantial factor in producing the result.

The row locks (sometimes referred to as butterfly catches) must be disengaged to close the bleachers. Collins noted in his report that some of the row locks in the balcony were bent and jamming and testified that what he meant by the term "jamming" was that occasionally a row lock did not disengage when it was supposed to, in which event the closing process was slowed down or stopped. There is also testimony that the bleachers stopped as the plaintiffs were pushing to close them because of the jamming of the row locks. There is also evidence indicating that in the folding process, the bleachers were binding on the slotted pipe which fact is also contained in Collins' report. The jury could infer that the failure to repair or cause to be repaired the row locks or give notice of the possible danger of these defects to the school authorities was a substantial factor in producing the accident. Likewise, reasonable men could differ on whether the defendant's conduct was a substantial factor in producing the accident and the question is therefore a proper one for the jury.

It is also the position of the defendant that the plaintiffs were required to produce expert testimony on the issues of causation. In *Cedarburg Light & Water Comm. v. Allis-Chalmers* (1967), 33 Wis. (2d) 560, 148 N. W. (2d) 13, this court said that the lack of expert testimony on the question of causation results in an insufficiency of proof where the issue involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors and the jury could only speculate as to what inferences to draw. However, the review of evidence above makes it evident that the plaintiffs introduced ample proof from which a jury could infer that the defendant's negligence was a substantial factor in bring-

ing about the accident, and the introduction of expert testimony was not necessary.

The defendant further states that a more probable cause of the accident was the failure to disengage the row locks by sufficiently pushing the rows from the front before beginning to push from the rear, citing *Baars v. Benda* (1946), 249 Wis. 65, 23 N. W. (2d) 477, as authority for its position. *Baars,* however, is distinguishable because in that case there was no testimony of any kind from which the jury could infer causal negligence. The court said, at page 70:

". . . We find no evidence whatever of negligence in respect of lookout or, indeed, in any other respect up to the time of the accident. . . ."

In the instant case there was evidence of defects which were discovered *before* the accident, and there was a jury question on whether the defendant was causally negligent. The plaintiffs have met their burden of proof by introducing "evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not." Prosser, Law of Torts (3d ed.), p. 246, sec. 41.

The defendant also claims it owed no duty to the plaintiffs because it was only "the factory agent" of Narragansett. Assuming this to be true, an agent has a duty to avoid conduct whereby its act or failure to act creates an unreasonable risk of harm to others, and every person must use ordinary care not to injure another. *Colton v. Foulkes* (1951), 259 Wis. 142, 146–148, 47 N. W. (2d) 901; Restatement, Agency (2d), p. 119, sec. 350, and reporter's notes. Whether the defendant in the course of ordinary care should have reported the defects or given more effective notice to the school authorities was properly a jury question, and there is sufficient credible evidence to support the jury finding.

*Alleged Errors of the Trial Court.*

Initially, the plaintiffs instituted a cause of action against the school district, Narragansett and the defendant setting forth the same allegations of negligence against Narragansett and the defendant. Having settled with the school district and Narragansett, the plaintiffs then filed an amended complaint which set forth the release and named only the appellant as defendant. At the trial, the defendant was not permitted to introduce into evidence the complaints against Narragansett and the school district. The trial judge was correct because there was no prior inconsistent position, inasmuch as the parties might be guilty of the same types of negligence in varying degrees, which, in fact, is precisely what the jury determined in this case. *Rude v. Algiers* (1960), 11 Wis. (2d) 471, 105 N. W. (2d) 825.

The defendant also objects to the trial court's refusal to submit a question to the jury asking whether Narragansett was negligent with respect to the manufacture and installation of the bleachers. There was no testimony offered at the trial as to the manufacture of the bleachers or as to demonstrate negligent installation of the bleachers by installer Ellis Peters, an employee of Narragansett. In this case, the trial court's refusal to submit questions relating to negligence in the manufacture and installation of the bleachers must be upheld.

". . . A trial court is not required to give a requested instruction unless the evidence reasonably requires it . . . ." *Belohlavek v. State*, ante, pp. 176, 179, 148 N. W. (2d) 665, 667.

Defendant also takes the position that the trial court should have instructed the jury with respect to the school district's duty under the safe-place statute. The trial court instructed the jury on the question of school district's negligence, and the jury attributed 10 percent of

the causal negligence to the district. Thus, having been so instructed, and the jury having determined that 10 percent of the negligence was attributable to the school district, it is of no consequence whether the negligence was under the safe-place statute or common-law negligence. *Presser v. Siesel Construction Co.* (1963), 19 Wis. (2d) 54, 65, 119 N. W. (2d) 405, and cases cited therein.

*By the Court.*—Judgments affirmed.